## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CAMPBELL FARMING CORPORATION;
CAMPBELL RANCH COMMUNITIES, LLC; and
SOUTH MOUNTAIN RANCH, INC.,

Plaintiffs,

v.                                                            No.

TOWN OF EDGEWOOD, NEW MEXICO; and
BERNALILLO COUNTY, NEW MEXICO,

Defendants.

## **COMPLAINT**

The United States Constitution guarantees certain rights to property holders: that their land will not be taken by the government without just compensation, that they will not be deprived of their property interests without due process of law, and that the government will treat them in the same manner as other similarly situated property holders.

All citizens in an area benefit when local private property owners invest significantly in land—essentially buying a stake in the future of that region—and then engage top tier planners, architects, and environmental consultants at the landowner's own expense to create well-designed, long-term developments. Effective placemaking is a critical aspect of planning and good development and ensures a vibrant and successful community for the entire area.

Conversely, the unilateral dismissal of zoning and property agreements, particularly

when this results in the trampling of constitutional rights, severely chills long-term planning and quality property development, leading to enormous adverse impacts on land values. This fosters short-term, piecemeal development that can harm property values across the entire region. Moreover, these actions can make it incredibly difficult to create quality housing communities at attainable prices. The government's ignoring of valid, binding property, zoning, and development agreements is not only legally unjust, but actively discourages some of the very values deemed paramount from private property owners: to work cooperatively with the local government to the benefit of the entire community.

Yet Plaintiffs Campbell Farming Corporation ("CFC"); Campbell Ranch Communities, LLC; and South Mountain Ranch, Inc. (collectively, "Plaintiffs") have suffered these injustices through the actions of the Town of Edgewood and Bernalillo County, both in New Mexico, towards Plaintiffs' property, Campbell Ranch.

The Town of Edgewood has unfairly denied Plaintiff CFC's application for a minor subdivision in Campbell Ranch, contravening the Town's prior development agreement with CFC. Similarly, Bernalillo County has unfairly and repeatedly intervened in various lawsuits and administrative proceedings over the years to limit Campbell Ranch's access to water, and recently derailed CFC's application for a minor subdivision in Campbell Ranch, even though most of Campbell Ranch is not under Bernalillo County's jurisdiction. These actions have harmed all three plaintiffs. Plaintiffs therefore file this complaint against Defendants the Town of Edgewood and Bernalillo County for relief under 42 U.S.C. § 1983 as to

Defendants' violations of the Takings Clause, the Due Process Clause, and the Equal Protection Clause of the United States Constitution, as well as for relief as to Plaintiffs' related claim against Defendant the Town of Edgewood for breach of contract.

## PARTIES

1.      Plaintiff Campbell Farming Corporation is a corporation that is incorporated in Montana and located in Edgewood, New Mexico. It is sometimes referred to as "Campbell Farming Corp.," including in various documents within the minor subdivision application at issue in this Complaint, but both names refer to the same corporate entity. CFC is the parent corporation of both Plaintiff Campbell Ranch Communities, LLC and Plaintiff South Mountain Ranch, Inc.

2.      CFC owns thousands of acres across New Mexico, including the majority of the land within Campbell Ranch. Campbell Ranch is located in the East Mountains between Albuquerque and Santa Fe, New Mexico, and falls within Bernalillo, Sandoval, and Santa Fe Counties.

3.      Plaintiff Campbell Ranch Communities, LLC, is a limited liability company that was formed in Nevada and its principal place of business is in Edgewood, New Mexico. It owns a portion of the Campbell Ranch land covered by the Campbell Ranch Master Plan.

4.      Plaintiff South Mountain Ranch, Inc. is a corporation that is incorporated in Delaware and located in Edgewood, New Mexico. It owns a portion of the Campbell Ranch land covered by the Campbell Ranch Master Plan.

5.      Defendant Town of Edgewood is a municipality located in Santa Fe County, New Mexico. It is governed by a Town Commission, consisting of five Commissioners.

6.      At all times relevant to this Complaint, the Town Commission of Edgewood was acting on behalf of the Town of Edgewood under the authority of the laws of the State.

7.      At all times relevant to this Complaint, the Town was a "person" as defined under 42 U.S.C. §§ 1983 and 1988.

8.      Defendant Bernalillo County is a county in New Mexico. It is governed by a Board of Commissioners, consisting of five Commissioners.

9.      At all times relevant to this Complaint, the Bernalillo County Board of Commissioners was acting on behalf of Bernalillo County under the authority of the laws of the State.

10.      At all times relevant to this Complaint, Bernalillo County was a "person" as defined under 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION AND VENUE

11.      This Court has subject-matter jurisdiction over Plaintiffs' constitutional claims pursuant to 28 U.S.C. § 1331, because this action arises under the U.S. Constitution and the laws of the United States, including 42 U.S.C. § 1983.

12.      This Court has subject-matter jurisdiction over Plaintiffs' claim for breach of contract pursuant to 28 U.S.C. § 1367(a), because this claim is so related to Plaintiffs' constitutional claims in this action within the Court's original jurisdiction that it forms part

of the same case or controversy under Article III of the U.S. Constitution.

13.    This Court has personal jurisdiction as all parties are located and conduct business in the State of New Mexico and the conduct that is the subject of this action took place in New Mexico.

14.    Venue is proper under 28 U.S.C. § 1391 because all or a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in the District of New Mexico.

<u>**FACTUAL ALLEGATIONS**</u>

**A.    CFC's History in New Mexico.**

15.    CFC was founded in 1922 by General Thomas D. Campbell, who turned a modest farming business into what became the world's largest wheat producer. Known for expertise in large scale logistics, Campbell received a wartime meritorious appointment to the rank of General Officer due to his efforts organizing critical supply lines of food and materiel to Allied troops during World War II, particularly for the Allied campaigns in North Africa during which logistics played a key role in Allied victories.

16.    Beginning in the late 1930s, Campbell expanded CFC's operations to New Mexico. CFC's New Mexico operations eventually spread to around 400,000 acres of land which was actively farmed and ranched for decades.

17.    CFC is known for its responsible land use and conservation efforts, which include the preservation of land that became the 226,000-acre Sevilleta National Wildlife

Refuge. This remains the largest single private donation of land to the U.S. Wildlife Refuge System in American history.

18.    Witnessing the haphazard and unplanned development occurring in the Bernalillo County area outside of the Campbell Ranch property, CFC began developing and overseeing development projects on portions of the ranch land to create planned residential communities in the late 1980s.

19.    Furthering its efforts to ensure responsible development with forward planning on its land, CFC undertook an even more comprehensive planning process at its own expense. CFC created a master plan to establish an overall zoning and land use framework for the development of approximately 8,000 acres of the remaining Campbell Ranch property, known today as the Campbell Ranch Master Plan ("Master Plan").

20.    The Master Plan area is divided into four villages, each to be a separate planned community.

21.    The Master Plan is comprised of 8,046 acres, with approximately 2,932 acres designated as open space.

22.    In 2001, thousands of acres of the Master Plan were annexed into the Town of Edgewood, New Mexico, with the remaining 1,217 acres (Village 1 of the Campbell Ranch Master Plan) remaining in Bernalillo County.

23.    The decision not to annex Village 1 into the Town of Edgewood was based on Bernalillo County's hostility to the annexation plan. Village 1 was the only parcel in the

Master Plan that touched a county-maintained road. As a result, Bernalillo County did not have any legal standing to challenge the annexation of the remaining parcels.

24.    Since the Master Plan was annexed by the Town of Edgewood, as described below, CFC has invested millions of dollars in development planning for Campbell Ranch, including comprehensive surveying, extensive hydrogeological studies, and detailed engineering analyses. CFC has also devoted significant time, resources, and reputation to identify and cultivate relationships with financial and construction partners who had the ability and financial strength to help CFC create a high-quality sustainable development at Campbell Ranch.

**B.    The Town of Edgewood Annexed Campbell Ranch.**

25.    On December 3, 2001, the Town of Edgewood annexed 13,538 acres of the Master Plan area. All the acres were zoned "MP," which is the Master Plan Zone described in Section 12 of the Town's 1999 Comprehensive Zoning Ordinance, Ordinance No. 1999-Q.[1] This annexation included 6,826 acres planned for Campbell Ranch Villages 2, 3, and 4, as well as an additional 6,712 acres.

26.    This annexation was completed pursuant to an Annexation and Development Agreement ("A&D Agreement"), attached to this Complaint as <u>Exhibit A.</u>

27.    The A&D Agreement explained that its purpose was to "specify the Terms and

---

[1] A copy of this Ordinance can be found on the Town's website, at https://www.edgewood-nm.gov/media/5306 (last accessed Oct. 27, 2025).

Conditions of consent for, and to specify other provisions related to, the annexation and development of certain lands, as requested by Campbell Farming Corporation . . . by the Town of Edgewood." *See* Ex. A, at Section 1(1).

28.    The A&D Agreement also stated that CFC and the Town of Edgewood "anticipate that this Agreement will induce [CFC] to develop its property in, and bring the many incidental benefits of that development to, the Town." *Id.* at Section 1(2).

29.    The A&D Agreement set forth the obligations of each party. *See generally* Ex A. CFC's "obligation to the Town is to develop those Lands of [CFC] included in the Campbell Ranch Master Plan in accordance with that Plan and with [CFC]'s business judgment." *Id.* at Section 1(3). Correspondingly, "the Town's obligation to [CFC], if it approves the annexation and as permitted by law, is to permit [CFC] to complete the development under the Campbell Ranch Master Plan in accordance with that Plan and with 'Section 4: Rules for Development' as provided" in the A&D Agreement. *Id.*

30.    The A&D Agreement was explicitly "binding upon [CFC], including its heirs and/or assigns, and the Town." *Id.* at Section 2(1).

31.    As one of the Terms and Conditions of the A&D Agreement, CFC was required to "demonstrate a sufficient supply of potable domestic water for any proposed subdivision of land at the time application is made with the Town for any Preliminary Plat approval, and in accordance with applicable Ordinances and Policies of the Town." *See id.* at Section 3(1)(H).

32.    In Section 4 of the A&D Agreement, which discussed the "Rules for Development," the A&D Agreement stated that "the 'Applicable Rules for Development' . . . of the lands governed by the Campbell Ranch Master Plan shall be those rules, regulations, ordinances, and official policies of the Town relating to zoning, subdivision, and development, which are in force on the effective date of this Agreement." *Id.* at Section 4(1).

33.    The effective date of the A&D Agreement was December 3, 2001. *See id.* at Section 11. The Edgewood subdivision regulations in effect at that time were the September 1, 1999 Subdivision Regulations for the Town of Edgewood, Santa Fe County, New Mexico ("1999 Subdivision Regulations"), attached to this Complaint as <u>Exhibit B.</u>

34.    The A&D Agreement further stated that later regulatory changes would not apply to the A&D Agreement. "Consistent with the purposes of this Agreement, any change in the 'Applicable Rules' (including without limitation any change in the specific plan, zoning, subdivision or building regulation) enacted by the Town after the date of this Agreement (including without limitation any change by means of ordinance, Town Charter amendment, initiative, resolution, policy, order or moratorium by whoever initiated or instituted and adopted) which would conflict with or be more restrictive than the 'Applicable Rules' in effect on the date of this Agreement, or would otherwise prevent or delay the implementation of the Campbell Ranch Master Plan in accordance with this Agreement, shall not be applied to the Campbell Ranch Master Plan." <u>Ex. A,</u> at Section 4(1).

35.    If either party violated the A&D Agreement, the other would "have the right"

- 9 -

"to all remedies available at either law or equity, or both, including without limitation the right to bring injunctive or mandamus actions against the other to compel performance or prevent, or stop ongoing, breach." *Id.* at Section 5(1).

**C.    The 1999 Subdivision Regulations Governed the Evaluation Process of CFC's Minor Subdivision Application.**

36.    As noted above, per the language of the A&D Agreement, the 1999 Subdivision Regulations were the "Applicable Rules for Development" as to any subdivision applications or planning at Campbell Ranch. *See* Ex. A, at Section 4(1); *see generally* Ex. B.

37.    The 1999 Subdivision Regulations defined "Subdivision" to mean "the division of any lot or tract of land into two or more lots for the purpose of sale, lease, or development." Ex. B, at Section 5(B)(18).

38.    The 1999 Subdivision Regulations also defined "Subdivision, Minor" to mean "a subdivision containing not more than five lots, and not in conflict with any provision of these Regulations, or Master Plan or Zoning Ordinances of the Town[.] Minor Subdivision may include the replat of all or a portion of an existing subdivision plat wherein the number of lots is not increased and no changes are made to public rights-of-way." *Id.* at Section 5(B)(19).

39.    The 1999 Subdivision Regulations provide different procedures for minor subdivision applications, preliminary plat applications, and final plat applications. *Id.* at Sections 9-13.

40.    Section 9 of the 1999 Subdivision Regulations sets out the procedures for

review and approval of minor subdivision applications. *Id.* at Section 9.

41.    Under Section 9 of the 1999 Subdivision Regulations, "[i]n order to qualify for approval as a minor subdivision, the following conditions must exist:

(1) The subdivision shall contain no more than 5 lots, with the exception of certain replats, which satisfy all other conditions stated herein.

(2) Access to a publicly maintained, dedicated road must be provided by the subdivider by either a private roadway easement or dedicated Public Right-of-Way.

(3) The Town shall not be responsible for any private roadway easements developed in a minor subdivision.

(4) The Town may accept maintenance of any publicly dedicated roads within a minor subdivision.

(5) In order for a replat to qualify as a minor subdivision, the total number of replatted lots shall not increase the total number of previously existing lots.

(6) The Subdivision shall not be in conflict with any provision of these Regulations, or the Master Plan or Zoning Ordinance of the Town."

*Id.* at Section 9(B).

29.    The 1999 Subdivision Regulations state that minor subdivision applications only require a two-step review process: (1) pre-application review and (2) submission of final plat. *Id.* at Section 9(A).

30.    Sections 7 and 8 of the 1999 Subdivision Regulations describe the pre-application procedure, which requires an applicant to submit a location map, sketch plan, and general plat information to the Town of Edgewood's Planning Commission. *Id.* at Sections 7-8. The Planning Commission then either informs the subdivider that the sketch

plan and data meet the intent of the 1999 Subdivision Regulations or explains why they do not meet the intent and provides advice on how to bring the proposed plan into conformance. *Id.* at Section 7(C).

31.     Following the pre-application review of the minor subdivision application, the 1999 Subdivision Regulations state that the subdivider submits the application on the required forms in advance of the scheduling Planning Commission meeting where the final plat will be formally submitted for review. *Id.* at Section 9(C). The Planning Commission then approves or disapproves the final plat, and if approved, the final plat will be recorded in accordance with the procedures stated in the 1999 Subdivision Regulations. *Id.*

32.     In contrast, the procedures for review and initial approval of a preliminary plat, and the subsequent procedures for final plat approval, in the 1999 Subdivision Regulations are much more onerous than those for a minor subdivision application. *Id.* at Sections 10-13. Among other things, applications for a preliminary plat must include information about water supply, utility distribution plans, and storm drainage management plans. *Id.* at Section 11(B)-(D). Unlike with a minor subdivision application, the regulations specifically indicate that the Planning Commission should request comments from Town staff and other government agencies where appropriate while reviewing the preliminary plat application. *Id.* at Section 10(B).

33.     Similarly, the final plat application after a preliminary plat is approved also requires more information than the final plat application for a minor subdivision, such the

delineation of any flood plains or base flood evaluations designated by the Federal Emergency Management Agency, the mileage of streets created, and information on any lots proposed to be dedicated or reserved for the public. *Compare id.* at Section 9(E) and Section 13(C).

34.    The 1999 Subdivision Regulations also include an appeals provision, explaining that "[a]ny person aggrieved with any determination of the Planning Commission acting under these Regulations may file an appeal to the Town Board." *Id*. at Section 22.

**D.    Bernalillo County Repeatedly Interferes to Limit Campbell Ranch's Access to Water.**

35.    Under New Mexico law, municipalities have "planning and platting jurisdiction within [their] municipal boundar[ies]." NMSA 1978, § 3-19-5(A) (2003).

36.    The majority of Campbell Ranch has been annexed by the Town of Edgewood, including the land planned for Campbell Ranch Villages 2, 3, and 4.

37.    As a result of this annexation by the Town, Bernalillo County has no jurisdiction over platting decisions made in or about these areas of Campbell Ranch.

38.    Despite its lack of jurisdiction over these Campbell Ranch lands, Bernalillo County, through its Board of County Commissioners, has repeatedly interfered with Campbell Ranch's ability to obtain additional water supplies over the years.

39.    Plaintiffs are not pursuing claims regarding Bernalillo County's interference with its ability to access water supplies, but these allegations provide relevant context to understand the long history of Bernalillo County's aggressive action to harm Plaintiffs and

Campbell Ranch.

40.    In 2007, CFC entered into an agreement with the New Mexico Water Service Company ("NMWSC"). Under this agreement, NMWSC agreed to provide water services for up to 750 units in Campbell Ranch Village 2.

41.    This service extension was allowed under the state's Public Utility Act. *See* NMSA 1978, § 62-1-5 (1953). Additionally, while NMWSC was required to notify the New Mexico Public Regulation Commission about the extension, approval from the Public Regulation Commission was not required as Campbell Ranch Village 2 was contiguous territory not receiving similar service from another utility and was within 0.5 miles of existing NMWSC infrastructure. *See* 17.5.440.9(A)(1)(a), (2) NMAC.

42.    Nevertheless, NMWSC filed a petition with the Public Regulation Commission to clarify the limits of its service area, as, upon information and belief, residents of the Sandia Knolls area claimed that the Public Regulation Commission had previously limited NMWSC's service area solely to Sandia Knolls.

43.    Bernalillo County intervened in the Public Regulation Commission matter involving Sandia Knolls and NMWSC ("PRC Matter").

44.    Upon information and belief, Bernalillo County asserted in the PRC Matter that it had broad rights to regulate (and prevent) NMWSC's service extension into Campbell Ranch under the County's Subdivision Act, even though this issue was well outside the scope of the limited question presented in the PRC Matter: whether the prior Public Regulation

Commission order had limited NMWSC's service area to Sandia Knolls.

45.    NMWSC subsequently withdrew its service commitment to Campbell Ranch.

46.    After losing its service commitment from NMWSC, CFC partnered with Vidler Water Resources to start its own water utility company, Aquifer Science.

47.    Aquifer Science then applied to the New Mexico Office of the State Engineer to request a new groundwater appropriation in the Sandia Basin to provide water for the Campbell Ranch Master Plan area.

48.    The State Engineer initially denied the application. Aquifer Science then amended its application to reduce the appropriation requested. The State Engineer determined that there was available water for Aquifer Science's amended application, that there would be no impairment to existing water rights, and that the amended application was not contrary to conservation or detrimental to the public welfare.

49.    Bernalillo County opposed Aquifer Science's application and intervened in a pending suit between the State Engineer and Aquifer Science regarding the denial of the initial application. *See generally Aquifer Science, LLC v. Verhines*, 527 P.3d 667 (App. 2022) (appellate court decision affirming denial of application).

50.    During or shortly after this litigation was completed, the State Engineer ended up closing the water basin closest to Campbell Ranch without any new water applications.

51.    This action by the State Engineer, resulting from Bernalillo County's intervention in the lawsuit between Aquifer Science and the State Engineer, has effectively

barred Campbell Ranch for accessing any significant source of water.

**E.    The Town Previously Repeatedly Denied CFC's Platting Extension Requests.**

52.    In December 2007, the Town's Planning and Zoning Commission approved an application by CFC to create three large tracts, as well as a preliminary plat subdivision of 92 lots on approximately 45 acres of land within one of those three large tracts. This preliminary plat subdivision was intended to be the initial subdivision within Campbell Ranch Village 2. All of the land covered by this application was acreage previously annexed by the Town. The conditional approval by the Planning and Zoning Commission was for one year, pending CFC's compliance with all applicable state and local ordinances.

53.    However, during the intervening months, Bernalillo County interfered with Campbell Ranch's plan for water access. As explained above, the water and wastewater service provider whose service area adjoined the Campbell Ranch property had previously given CFC a written commitment to service Campbell Ranch Village 2, with the likelihood that it would eventually service all of Campbell Ranch. The County strongly discouraged the provider from following through on that commitment. Upon information and belief, the provider ultimately gave into the County's threats because of the large anticipated legal costs, which would have been impossible for the provider to recover as the Public Regulation Commission evaluates any regulated utility's request to increase rates and the provider would likely not have been allowed to raise its costs to cover these legal costs. Therefore, the provider had to decline to service Campbell Ranch.

54.    Although CFC made substantial progress and significant financial expenditures during this one-year period, the legal matters caused in large part by Bernalillo County's actions described above meant CFC was required to seek an extension of the application's approval in December 2008. The Planning and Zoning Commission denied this extension request in May 2009 and again in November 2009, incorrectly claiming that CFC had not shown the extension was unavoidable and was in the public interest.

55.    CFC appealed the Planning and Zoning Commission's decision to the Town Commission[2], who affirmed the denial of CFC's extension request in July 2010.

56.    The cost for CFC to find a new water and wastewater service provider and to go through this entire application process again was incredibly prohibitive and nearly impossible in light of Bernalillo County's tactics to pressure the adjoining provider against working with Campbell Ranch.

57.    The Town thus has historically ignored the discriminatory actions of Bernalillo County against CFC and has placed a higher burden on CFC when it sought approval of platting and minor subdivision applications.

**F.    The Town's Planning and Zoning Commission Approves Campbell Ranch's Application for a Minor Subdivision.**

58.    In November 2024, CFC submitted a minor subdivision application for Campbell Ranch Village 2 to the Town's Planning and Zoning Commission.

---

[2] The Town Commission was called the "Town Council" at that time.

59.    This application would create five tracts within Campbell Ranch Village 2, which is located within the land annexed by the Town.

60.    As this land was within the Master Plan—and thus was already zoned as "Master Plan Zone"—the application was not a zoning matter. The Master Plan was the zoning entitlement for the property addressed in the application. Instead, the application was a platting matter, intended simply to fulfill the zoning regulations within the Master Plan for the creation of minor subdivisions.

61.    The distinction between platting and zoning here is critical. While local government officials generally have discretion in zoning matters, that differs for a platting matter, which is typically viewed as a ministerial act and usually should be denied only if explicit requirements are not met.

62.    The Planning and Zoning Commission properly reviewed the application, and both deliberated and received public input on the application at a public hearing.

63.    The Planning and Zoning Commission voted on November 21, 2024 to approve the minor subdivision application.

64.    In its later written decision, the Planning and Zoning Commission explicitly stated that the application was not for preliminary plat approval, meaning the requirement in Section 3(1)(H) of the A&D Agreement, regarding CFC's demonstration of a sufficient supply of potable water for any preliminary plat approval, was not applicable.

**G.    On Appeal, the Town Commission Denies Campbell Ranch's Application and Remands to the Planning and Zoning Commission.**

65.    The Planning and Zoning Commission's approval was appealed to the Town Commission by Bernalillo County, a local environmental activist organization, and several individuals. Most of these appellants were represented by counsel, including Bernalillo County. In fact, the County brought multiple attorneys to all the 2024 and 2025 meetings described herein, including the County Attorney himself, impliedly pressuring the Town from acting against the County's desires.

66.    The Town Commission held a quasi-judicial hearing in March 2025.

67.    At the hearing, the Planning and Zoning Commission was treated as the appellee—not CFC. As a result, the neutral Planning and Zoning Commission was the primary party expected to assert CFC's interests as to the application approval. But the Planning and Zoning Commission, understandably, was attempting to act as an unbiased neutral party to provide basic, objective facts to the Town Commission regarding the application, not arguments for or against its approval.

68.    In contrast, the appellants were each given an extensive amount of time to present arguments against CFC's application. As a result, the Town Commission received a biased perspective on whether the application should be approved.

69.    The Town Commission reversed the Planning and Zoning Commission's approval. It also remanded the minor subdivision application to the Planning and Zoning Commission for further proceedings.

**G.    The Planning and Zoning Commission Approves the Application Again.**

70.    In advance of the remand hearing, a Town Planning and Zoning official prepared a staff report for the Commission regarding the application. The official provided extensive factual findings, which showed that approval of CFC's application would be appropriate. The report explained that the applicable Planning and Zoning ordinance by which to evaluate the application was the 1999 Subdivision Regulations. The official determined that the approved minor subdivision was not in conflict with these regulations, with the Master Plan, or with any other Town zoning ordinance. The official also stated that the application met all the requirements of Section 9 of the 1999 Subdivision Regulations regarding the procedures for approval of a minor subdivision application.

71.    On May 15, 2025, the Planning and Zoning Commission held a nearly seven-hour hearing on the remand of CFC's minor subdivision application.

72.    The Planning and Zoning Commission then voted unanimously to approve the minor subdivision application for a second time, adopting the finding of the staff report and providing even more extensive and detailed findings of fact to clearly demonstrate how the application met the relevant requirements.

73.    The Planning and Zoning Commission correctly determined that the applicable subdivision regulations by which to evaluate the application were the 1999 Subdivision Regulations, as those were the regulations in place at the time of the A&D Agreement's effective date.

74.    The Planning and Zoning Commission also determined that application met the required criteria of Section 9 of the 1999 Subdivision Regulations.

75.    The Planning and Zoning Commission also determined that Sections 10-19 of the 1999 Subdivision Regulations did not apply to CFC's minor subdivision application, because the application was not for a preliminary plat.

## H.    The Town Commission Denies the Application a Second Time.

76.    Many of the same parties who appealed the Planning and Zoning Commission's first approval of CFC's minor subdivision application appealed this second decision, including Bernalillo County.

77.    Bernalillo County also submitted a written objection to CFC's minor subdivision application. In that objection, the County incorrectly argued that the preliminary plat requirements regarding water supply in the A&D Agreement applied to the application.

78.    On July 24, 2025, the Town Commission held a quasi-judicial hearing for the appeal. Once again, the neutral Planning and Zoning Commission was treated as the appellee, rather than CFC.

79.    Upon information and belief, CFC's attorney was notified in advance of the hearing that no CFC representative would be allowed to speak at the hearing, even though CFC's project engineer, Sheldon Greer, had spoken at the earlier Planning and Zoning Commission hearings.

80.    When Mr. Greer and CFC's Chief Executive Officer, Robert Gately, arrived at

the hearing, they were explicitly informed by a Planning and Zoning Commission official that CFC was not allowed to speak at the hearing. They were instead directed to sit in the audience, rather than at a counsel table before the Town Commission as was allowed in the prior hearings.

81.    At the hearing, only representatives for the Planning and Zoning Commission and representatives for the appellants were allowed to testify. Once again, the Planning and Zoning Commission took a neutral posture at the hearing. Meanwhile, the appellants were each given a significant amount of time to testify and argue against the application, resulting in substantially more time spent on the reasons against granting the application.

82.    Mr. Greer tried to speak during the hearing but was told that he could not do so because the Commission was in the middle of a motion. He was prevented from speaking to the Commission altogether. As a result, CFC was unable to provide any testimony in support of the Planning and Zoning Commission's decision to grant its minor subdivision application, nor did other witnesses provide substantial supportive testimony.

83.    After the hearing, the Town Commission unanimously denied CFC's minor subdivision application, with one commissioner abstaining from voting based on a conflict of interest.

84.    The Town Commission issued a formal ruling on July 31, 2025, attached to this Complaint as Exhibit C.

85.    The Town Commission incorrectly claimed that the application did not

"provide adequate documentation or assurances regarding the availability of domestic water supply as required by Section 14 [of the 1999 Subdivision Ordinance]" and Section 3(1)(H) of the A&D Agreement. *See* <u>Ex. C</u>, at 3.

86.    The Town Commission also incorrectly claimed that the proposed minor subdivision was not in compliance with the Campbell Ranch Master Plan and the Town's *current* zoning ordinances. *See id.*

87.    The Town Commission inaccurately claimed that CFC failed to demonstrate it had a vested right under either the A&D Agreement or common law regarding the approval of its minor subdivision application—despite barring CFC from presenting any such testimony at the hearing. *See id*. at 3-4.

88.    Contrary to the binding terms of the A&D Agreement, the Town Commission argued that it did not need to follow the 1999 Subdivision Regulations but could instead also apply more recent subdivision regulations. *Id.* at 4.

89.    The Town Commission also falsely claimed that the minor subdivision was not in the best interests of the Town's residents. *Id.* at 4-5.

90.    The Town Commission's decision repeatedly cited Bernalillo County's written objections and hearing testimony. *See generally id.*

91.    The Town Commission's decision to ignore the requirements of and the Town's contractual obligations in the A&D Agreement violated the Agreement's terms, breaching the contract between CFC and the Town.

92.    Upon information and belief, CFC understands that the Town has previously approved numerous minor subdivision applications in recent years.

93.    Upon information and belief, CFC is not aware of the Town Commission denying any other property holder's minor subdivision application by applying a version of the Town's zoning or subdivision regulations that were explicitly *not* applicable to that application.

94.    Upon information and belief, CFC is not aware of any other property holder where Bernalillo County has intervened in platting decisions where it does not have jurisdiction.

95.    The Town of Edgewood's repeated decisions, through its Town Commission, to deny CFC's minor subdivision application have harmed all the Plaintiffs, barring them from lawfully using their land in violation of the U.S. Constitution. The Town also failed to provide Plaintiffs with proper procedural or substantive due process before taking away these constitutional rights. The Town has also treated CFC differently from other similarly situated property holders and/or applicants for a minor subdivision within the Town's planning and platting jurisdiction, in violation of the Equal Protection Clause of the U.S. Constitution.

96.    Bernalillo County's actions, through its Board of Commissioners, to repeatedly intervene to thwart CFC's lawful development efforts have harmed all the Plaintiffs, barring them from lawfully using their land in violation of the U.S. Constitution. The County's actions also violated Plaintiffs' substantive due process rights. The County has

also treated CFC differently from other similarly situated property holders and/or applicants for a minor subdivision, in violation of the Equal Protection Clause of the U.S. Constitution.

97.    Both the Town's and the County's motives to devalue the Campbell Ranch property owned by the Plaintiffs are clear. The Town made comments at public meetings that it was interested in purchasing some portion of the Campbell Ranch property, but could not afford to do so. And Bernalillo County has been consistently trying to devalue Plaintiffs' property since it was annexed out of their jurisdiction. Their actions have violated Plaintiffs' constitutional and contractual rights, necessitating judicial relief.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Violation of Takings Clause of the Fifth Amendment to the U.S. Constitution
### (as to both Defendants)

98.    Plaintiffs incorporate and reallege all prior paragraphs as though set forth here in full.

99.    A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights, immunities, or privileges of citizenship under color of state law or authority.

100.    The United States Constitution provides, in relevant part, that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V.

101.    A government actor can "take" property for purposes of the Fifth Amendment either by physically depriving the owner of property or by placing upon the property such restrictive regulations that the owner is effectively deprived of the ability to use that property.

*See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).

102.   The acts of the Town of Edgewood, through the Town Commission, to repeatedly deny CFC's minor subdivision application despite its compliance with the applicable 1999 Subdivision Regulations have placed restrictions that have effectively deprived CFC of the beneficial use of its property.

103.   These restrictions prevent CFC from developing Campbell Ranch Village 2.

104.   Additionally, as these restrictions are directly contrary to CFC's prior development agreement with the Town, they have a chilling effect on any other potential commercial or residential use of the remaining areas of the Campbell Ranch Master Plan area, such that Plaintiffs cannot develop, sell, or otherwise use the property.

105.   These restrictions, whether justly or unjustly done, have burdened Plaintiffs' property to the extent that Plaintiffs have almost no beneficial use of the premises, constituting a taking under the Fifth Amendment. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987).

106.   Upon information and belief, the Town of Edgewood had a well-established custom, official practice, official policy, and/or official procedure whereby its Town Commission made platting and subdivision application approval decisions regarding Campbell Ranch and Plaintiffs' property based upon information not contained in the public record in quasi-judicial hearings before the Town Commission, and these decisions were contrary to the Town's applicable regulations.

107. The Town of Edgewood has not justly compensated Plaintiffs for the taking of their property.

108. The acts of Bernalillo County, through its Board of Commissioners, to inappropriately object to CFC's minor subdivision application despite the application's compliance with the applicable 1999 Subdivision Regulations, and despite the fact that the property at issue in the minor subdivision application is outside the County's jurisdiction, have resulted in the placement of restrictions that have effectively deprived CFC of the beneficial use of its property.

109. These restrictions prevent CFC from developing Campbell Ranch Village 2.

110. Additionally, as these restrictions are directly contrary to CFC's prior development agreement with the Town, and Bernalillo County has a history of intervening to thwart Plaintiffs' development attempts, these restrictions have a chilling effect on any other potential commercial or residential use of the remaining areas of the Campbell Ranch Master Plan area, such that Plaintiffs cannot develop, sell, or otherwise use the property.

111. Upon information and belief, Bernalillo County had a well-established custom, official practice, official policy, and/or official procedure whereby its Board of Commissioners improperly interfered in platting, utility, and subdivision application legal and administrative matters as to Campbell Ranch and Plaintiffs' property that were not within Bernalillo County's jurisdiction with the intent to prevent development of areas outside Bernalillo County's jurisdiction.

112.    Bernalillo County has not justly compensated Plaintiffs for the taking of their property.

113.    At all times relevant to this Complaint, Defendants, through their customs, practices, policy, and/or procedure, acted under color of state law and caused Plaintiffs to be deprived of their rights, privileges, and immunities under the U.S. Constitution.

114.    Plaintiffs respectfully request a declaratory judgment that the Town of Edgewood's denial of CFC's application for a minor subdivision violated the Fifth Amendment of the U.S. Constitution.

115.    Plaintiffs respectfully request a declaratory judgment that Bernalillo County's interference with the approval process for CFC's application for a minor subdivision violated the Fifth Amendment of the U.S. Constitution.

116.    As a direct and proximate result of this conduct, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

117.    As a result of this conduct, Plaintiffs are entitled to an award under the Fifth Amendment of the U.S. Constitution for just compensation for the taking or partial taking of their property, in addition to an award of the reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Violation of Due Process Clause of the Fourteenth Amendment**
**to the U.S. Constitution; Procedural Due Process**
**(as to Defendant Town of Edgewood)**

118.   Plaintiffs incorporate and reallege all prior paragraphs as though set forth here in full.

119.   A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights, immunities, or privileges of citizenship under color of state law or authority.

120.   The U.S. Constitution provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

121.   The Due Process Clause within the Fourteenth Amendment includes a protection for procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

122.   Under the Fourteenth Amendment to the U.S. Constitution, Plaintiffs have a protected property interest in, and right to make use of, the real property which is the subject matter of this action.

123.   Once CFC and the Town of Edgewood entered into the A&D Agreement, and Plaintiffs expended significant financial resources to begin development of that property, Plaintiffs had a vested property right to use their land in accordance with the conditions of

the A&D Agreement—including CFC's explicit obligation under the Agreement to develop its land in accordance with the Campbell Ranch Master Plan.

124.    CFC had a vested property right to use its property in accordance with the terms of the A&D Agreement, as CFC had received specific assurances from the Town that it would permit CFC to develop the property in accordance with the Campbell Ranch Master Plan, and CFC thus significantly relied on those assurances.

125.    Campbell Ranch Communities, LLC, and South Mountain Ranch, Inc. also had a vested property right to use their property in accordance with the terms of the A&D Agreement, as CFC had received specific assurances from the Town that it would permit the development of the Campbell Ranch property in accordance with the Campbell Ranch Master Plan. Campbell Ranch Communities, LLC, and South Mountain Ranch, Inc. thus significantly relied on those assurances.

126.    The Town of Edgewood, through its Town Commission, intentionally denied Plaintiffs their rights to procedural due process guaranteed under the Fourteenth Amendment to the United States Constitution, by failing to comply with the terms of the A&D Agreement, by granting the application's opponents an advantage at the hearings with additional time to testify and by making the neutral Planning and Zoning Commission the appellee, and by preventing any CFC representative from providing testimony or public comment at the July 2025 quasi-judicial hearing.

127.    The Town deliberately and arbitrarily abused its government powers in

depriving Plaintiffs of their Constitutional rights to procedural due process by denying CFC's application for a minor subdivision.

128.    The Town's procedures for the evaluation of minor subdivision applications, as implemented by the Town Commission, were constitutionally inadequate and unfair.

129.    Plaintiffs respectfully request a declaratory judgment that the Town of Edgewood's denial of CFC's application for a minor subdivision, based in part on its failure to comply with the A&D Agreement, its unequal treatment of the application's opponents, and its blocking any CFC representative from speaking at the July 2025 quasi-judicial hearing, violated the Fourteenth Amendment of the U.S. Constitution and that the Town Commission should have applied the 1999 Subdivision Regulations in evaluating CFC's application.

130.    As a direct and proximate result of this conduct, Plaintiffs have suffered and continues to suffer damages in an amount to be proven at trial.

131.    As a result of this conduct, Plaintiffs are entitled to an award under the Fourteenth Amendment of the U.S. Constitution for the violation of their procedural due process rights, in addition to an award of the reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983
**Violation of Due Process Clause of the Fourteenth Amendment
to the U.S. Constitution; Substantive Due Process
(as to both Defendants)**

132.    Plaintiffs incorporate and reallege all prior paragraphs as though set forth here in full.

133.    A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights, immunities, or privileges of citizenship under color of state law or authority.

134.    The United States Constitution provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

135.    The Due Process Clause within the Fourteenth Amendment includes a protection for substantive due process, which bars "certain governmental actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

136.    Under the Fourteenth Amendment to the U.S. Constitution, Plaintiffs have a protected property interest in, and right to make use of, the real property which is the subject matter of this action.

137.    The Town of Edgewood, through its Town Commission, intentionally denied Plaintiffs their rights to substantive due process guaranteed under the Fourteenth Amendment to the U.S. Constitution.

138.   The Town deliberately and arbitrarily abused its government powers in depriving Plaintiffs of their Constitutional rights to substantive due process by denying CFC's application for a minor subdivision.

139.   The actions of the Town Commissioners, who at all times relevant to the Complaint were acting on behalf of the Town, were excessively arbitrary and egregious in depriving Plaintiffs of their property.

140.   Bernalillo County, through its Board of Commissioners, intentionally denied Plaintiffs their rights to substantive due process guaranteed under the Fourteenth Amendment to the U.S. Constitution.

141.   The County deliberately and arbitrarily abused its government powers in depriving Plaintiffs of their Constitutional rights to substantive due process by intervening to force the denial of CFC's application for a minor subdivision.

142.   The actions of the Bernalillo County Board of Commissioners, who at all times relevant to the Complaint were acting on behalf of the County, were excessively arbitrary and egregious in depriving Plaintiffs of their property.

143.   Plaintiffs respectfully request a declaratory judgment that the Town of Edgewood's denial of CFC's application for a minor subdivision violated the Fourteenth Amendment of the U.S. Constitution and that the Town Commission should have applied the 1999 Subdivision Regulations in evaluating CFC's application.

144.   Plaintiffs respectfully request a declaratory judgment that Bernalillo County's

intervention to oppose CFC's application for a minor subdivision violated the Fourteenth

Amendment of the U.S. Constitution, as Bernalillo County does not have jurisdiction over

the property at issue in CFC's application.

145.    As a direct and proximate result of both the Town's and the County's conduct,

Plaintiffs have suffered and continues to suffer damages in an amount to be proven at trial.

146.    As a result of this conduct, Plaintiffs are entitled to an award under the

Fourteenth Amendment of the U.S. Constitution for the violation of their substantive due

process rights, in addition to an award of the reasonable costs and expenses of this action,

including attorneys' fees, in accordance with 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Violation of Equal Protection Clause of the**
**Fourteenth Amendment to the U.S. Constitution**
**(as to both Defendants)**

147.    Plaintiffs incorporate and reallege all prior paragraphs as though set forth here

in full.

148.    A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights,

immunities, or privileges of citizenship under color of state law or authority.

149.    The United States Constitution provides, in relevant part, that "[n]o state shall

. . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV, §1.

150.    Under the Fourteenth Amendment to the U.S. Constitution, Plaintiffs have a

protected property interest in, and right to make use of, the real property which is the subject matter of this action.

151.    In denying CFC's minor subdivision application, the Town of Edgewood treated Plaintiffs differently from others similarly situated, who upon information and belief typically had their minor subdivision applications approved without issue.

152.    There is no rational basis for the Town's differing treatment of Plaintiffs from these other similarly situated applicants for a minor subdivision.

153.    In objecting to CFC's minor subdivision application when it was outside its jurisdiction, Bernalillo County treated Plaintiffs differently from others similarly situated, as upon information and belief Bernalillo County has not intervened in similar minor subdivision applications within the Town of Edgewood's jurisdiction.

154.    There is no rational basis for the County's differing treatment of Plaintiffs from these other similarly situated applicants for a minor subdivision.

155.    The Town of Edgewood, through its Town Commission, intentionally denied Plaintiffs their rights to equal protection guaranteed under the Fourteenth Amendment to the United States Constitution.

156.    The Town deliberately and arbitrarily abused its government powers in depriving Plaintiffs of their Constitutional rights to equal protection by denying CFC's application for a minor subdivision.

157.    Bernalillo County, through its Board of Commissioners, intentionally denied

Plaintiffs their rights to equal protection guaranteed under the Fourteenth Amendment to the United States Constitution.

158.   The County deliberately and arbitrarily abused its government powers in depriving Plaintiffs of their Constitutional rights to equal protection by intervening to force the denial of CFC's application for a minor subdivision.

159.   As a direct and proximate result of both the Town's and the County's conduct, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

160.   As a result of this conduct, Plaintiffs are entitled to an award under the Fourteenth Amendment of the U.S. Constitution for the violation of their equal protection rights, in addition to an award of the reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**Breach of Contract**
**(as to Defendant Town of Edgewood)**

161.   Plaintiffs incorporate and reallege all prior paragraphs as though set forth here in full.

162.   The A&D Agreement between CFC and the Town of Edgewood is a valid and enforceable contract.

163.   CFC has fully performed its obligations under the terms and conditions of the A&D Agreement, except to the extent such performance was prohibited by the Town.

164.   The Town has breached the A&D Agreement by, among other things,

- Denying CFC's application and thus violating its obligation "to permit [CFC] to complete the development under the Campbell Ranch Master Plan in accordance with that Plan";

- Preventing CFC from developing the Master Plan area as required for CFC to comply with its obligations under the A&D Agreement; and

- Applying the *current* zoning ordinances to CFC's minor subdivision application despite the A&D Agreement explicitly stating that only the ordinances in effect at the time of the A&D Agreement's execution were applicable.

165.    Plaintiffs have been damaged as a direct, proximate, and foreseeable result of the Town's breach of contract, and therefore should be awarded monetary damages, along with interest, attorneys' fees, and costs, in an amount to be proven at trial.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all issues in this case that are triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter Judgment in their favor as follows:

1.    A declaration that the Town of Edgewood and Bernalillo County violated the United States Constitution through their actions described above;

2.    A declaration that the Town of Edgewood breached the terms of the

Annexation and Development Agreement through its actions described above;

3.      An award of compensatory damages against the Defendants, in an amount to be determined at trial;

4.      An award of punitive damages against the Defendants for their malicious, intentional, fraudulent, oppressive, reckless, bad faith, or wanton behavior, in an amount to be determined at trial;

5.      An award of Plaintiffs' attorneys' fees and costs under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d), and any other applicable legal authority;

6.      An award of interest on any award of damages, attorneys' fees and/or costs at the highest rate allowable by law; and

7.      Any other and further relief as the Court may deem just and proper.

Respectfully Submitted,

By: *s/Walker F. Crowson*
      Walker F. Crowson (#12196)
      SNELL & WILMER LLP
      201 Third St. NW #500
      Albuquerque, New Mexico 87102
      Telephone: 505-944-9026
      wcrowson@swlaw.com

-and-

      Brett W. Johnson (*pro hac vice application forthcoming*)
      Ian R. Joyce (*pro hac vice application forthcoming*)
      SNELL & WILMER L.L.P.
      One East Washington Street
      Phoenix, Arizona 85004
      Telephone: 602-382-6000
      bwjohnson@swlaw.com
      ijoyce@swlaw.com

-and-

      Sarah E. Delaney (*pro hac vice application forthcoming*)
      SNELL & WILMER L.L.P.
      2501 N. Harwood Street, Suite 1850
      Dallas, Texas 75201
      Telephone: 214-305-7301
      sdelaney@swlaw.com

      *Attorneys for Plaintiffs Campbell Farming Corporation; Campbell Ranch Communities, LLC; and South Mountain Ranch, Inc.*